Good morning, Your Honor. Jan Kurowski on behalf of Appellant Douglas Grogg. I think what I'm presenting this morning is what I believe is a bedrock issue. It deals with the standards and processes by which jurors are selected. Impartiality is not a technical conception. It's a state of mind. That's a quote from one of the cases that underlay U.S. v. McClinton, which I cited in my opening brief. Are you injured if one impartial juror is excused and replaced by another impartial juror? Excellent question, Your Honor. It seems the cases seem to say, and particularly the U.S. Supreme Court, which is cited in the McClinton case, indicates that the test for determining impartiality in a prospective juror is whether he can, and I'm quoting, lay aside his impression or opinion, lay aside his impression or opinion, and render a verdict based on the evidence presented in court. The problem is that I think there is some aspect of a bright-line issue with regard to this topic. And I thought the reason I ask the question is that almost all the cases that impose duties on the court to ascertain whether a juror can put aside his prejudices and be impartial are ones where a defendant is complaining that a juror was left on the jury and was, in fact, not impartial. But you can see what the prejudice is. The defendant, then, is stuck with a juror who may be prejudiced and impartial to the prosecution. But when you excuse a juror, then what's the damage if an impartial juror replaces that? I understand. And I think that there is a conceptual and a constitutional issue, and that's why I raised it. It's the process and the substance that is more significant ultimately than the form. And I think that the question, also hypothetically, is what if this happens on a continual basis, and the district judge sitting there in the trench, if you will, is not utilizing the appropriate standard or process of inquiring of a juror. Well, but you're not complaining that the entire jury was flawed because the district court failed in Bois d'Ire to do something that was required by law? No, absolutely not. No, no, no. It's just it's this one juror, and it's the process. And I agree that there is a – it is probably very hypertechnical, but it's, in my opinion, based on the Constitution, on the U.S. Supreme Court precedent, and the fact that this juror was allowed to leave without asking the critical and, I think, bedrock question of can you, with that state of mind, lay it aside and be otherwise fair and impartial. But the colloquy with the excused juror revealed that he was concerned that he couldn't concentrate on the evidence and listen to it in its entirety because of his fear that his status as a registered sex offender would be disclosed, correct? Basically correct. I'm not so sure – actually, I'm not so sure that that's precisely correct or not. I cite the Court to page 116, lines 22 through 25 of the excerpt of the record. And if I can quote, the prospective juror said, quote, I have no problem serving on a jury. And then he stammered and stuttered a bit. He said, I just, I don't want to bring, you know. And then just reading this in context, I have no problem serving on a jury. If you say it's not going to complicate things or anything else, that's fine. And the position that the word that the appellant is taking is that here the juror says, I have no problem being on a jury. And on the other hand, you're right, Judge Hawkins, that he also says, yes, I have this snagging, somewhat paranoid fear, but he said that his fear of being discovered would make it more difficult for him to follow the testimony, correct? That's correct. And when the judge asked him if those concerns would affect his ability to deliberate with his fellow jurors, he said definitely. Yes. Definitely. Twice he said, correct. The Court's correct. And then in another instance, he says what I just quoted in terms of not having a problem serving on the jury. And it's those, in essence, contradictions, if you will, that the argument is constitutionally in terms of selecting a jury, the judge was obligated to say to him, look, can you set that aside? There was another instance that I didn't cite that the judge had asked that question. So he certainly knew the colloquy and the process by which the Supreme Court requires. And it looks as if it my reading of the case that I was citing from Murphy v. Florida, and it's not cited in the brief, but that's one of the cases that is cited in the Supreme Court briefing, it's a test. That's the test and the standard or the hurdle by which the district court is obligated to inquire of prospective jurors who have an opinion. You know, I tried cases for 25 years, probably a hundred jury trials, and watched hundreds, if not thousands, of prospective jurors get voir dired, and I never heard a prospective juror answer that question, no, about can you set aside your, you know. Some guy gets up there and says, I'm a member of the Ku Klux Klan, and, you know, I'm a violent racist, but it's, you know, can you be fair in judging this African-American? I've never seen a juror say the answer for that question that they, other than, yes, I can put all of that aside. I'm sorry. The court saying they always answer yes, regardless of what? They always say yes. Of course I can put that aside. Well, I understand. And the question for being in the trench at that point is to determine whether or not that makes any sense. I mean, some people, actually, depending on the nature of the issue, can put it aside. It's the further argument of the appellant that the court also did not indicate or make any effort to indicate that the court would instruct the rest of the panel, as it typically does, not to investigate anything outside the parameters of the evidence in court, nor to investigate the jurors themselves. Anything the court basically listened to the man, asked some solicitous questions, did not ask what we're arguing is a bedrock, bright-line question, regardless of what may otherwise be anecdotally a pat response, which puts the trial lawyer and the judge back in the same posture. But at least it's asked. And sometimes people say no. I mean, I defer to the court's experience. I've been try to ---- Well, what's the strongest authority? I think the strong ---- Excellent question, Your Honor. I think the strongest authority, and candidly, I could find no Ninth Circuit authority that this was out of the Seventh Circuit, McClinton. But McClinton cites Murphy v. Florida, which is 421 U.S. 794 at 800. And that's a United States 1975 case, which is still good law, of course. And in that, that's what I started the quotation to begin with, was that the test for determining impartiality in a prospective juror is whether they can lay aside that impression. And it seems to me that there is some aspect of an interplay between form and substance. But I think that if one abandons the form, it's going to be very difficult to acquire the substance. And I think that's the issue and the problem here. Okay. You have a minute for rebuttal. Thank you. If it may please the Court, good morning. I am John Vincent. I am an assistant United States attorney in Sacramento. I was trial counsel for the United States in this case. The standard of review in this case is whether the district court abused its broad discretion in determining the competency or impartiality of the juror. The United States, at page 11 of its brief, cited United States v. Beard, a case from this court, which involved the excusing of jurors during deliberations. And there, this court said that it must affirm a district court's decision to excuse a juror unless it is left with the, quote, definite and firm conviction, close quote, that the district court committed a clear error of judgment. The juror, as you know, was a registered sex offender, and he was afraid that other jurors would discover that he was a registrant. Judge Hawkins properly noted here this morning, the issue here is really not whether this juror could be impartial. It is whether or not he would be able to serve, whether he would be able to follow the evidence, and whether he would be able to deliberate. The defense argues that the court did not ask enough questions to see if the juror could set aside these concerns. And I submit that the juror's concerns struck at the core, at his core, and that further questions would have been a waste of time. And specifically, if you look at page 161, which is page 115 of the appellant's excerpt of record, a question was asked of him, sir, is your concern that as you come to court each day that this will get out, that is, that he was a sex registrant? Is that what the concern is? The juror answered, yeah. And then the question was, and because of that concern, do you believe you'll have difficulty following the testimony? The juror said, I do, I do. It's a distraction. It affects me at work and any kind of social gathering that I'm involved in. Question, do you think it will also affect your ability to deliberate with the other jurors? The juror answered, definitely, definitely. He says things twice to emphasize how strongly he feels about this. Now, counsel during argument here just referenced a question and the juror could have been able to handle it. And specifically, what he referenced was, counsel referenced where the juror at the bottom of page 116 of the excerpt of record said, I have no problem serving on a jury. I just, I don't want to bring, if you say it's not going to complicate things or anything else, that's fine. But what wasn't mentioned is what the court, the following colloquy right after that excerpt, the court said, well, it isn't going to complicate anything for us as you describe it, unless it has an effect on you that makes it difficult for you to fully participate as a member of the jury. By concentrating on the testimony of the witnesses, reviewing the exhibits, participating in jury discussions, all to the end of reaching a result that you can live with and be comfortable with, that's the question. And then the juror's response was, just like I say, Your Honor, it just, it affects me every day. And the court noted that during the course of this question and answer session with the juror, the juror was almost in tears at one point. It bothered him so much. The district court was in the best position to assess the situation and the depth of the juror's concerns. The district court correctly noted that the juror had said enough for everyone to have reason to doubt his ability to concentrate on the evidence and the witnesses and to reach a fair result. The government submits the decision was correct and well within the court's discretion. There was no error and the conviction should be affirmed. If there are any other questions, I'll submit it. Thank you. Very briefly, we're not suggesting, the panel's not suggesting, and the court certainly didn't, that it wasn't a close call. What we're saying is that it's a bright-line call. There's another bit of quotation that I thought was very telling, and the argument is that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. I'm quoting still from the McClinton case. Were that the rule, few trials would be constitutionally acceptable. And it's our argument that the district court did not ask what we're saying is a bright-line question to even give the opportunity of this juror to say, well, now that you say that, Your Honor, it certainly affects me every day, but it's something that I would say that I can, in fact, on reflection, set aside and listen to the evidence. And I think that the quote that I used and the attorney for the appellee quoted gave that impression. And we're saying that without asking that nugget of a question, that the court committed error and the court should remand it back for a new trial. Thank you so much. Case to start, you've been submitted for decision.
judges: Schroeder, Canby, Hawkins